Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| EDUARDO J. PELLERANO NADAL<br><br>RECURRIDO<br><br>v.<br><br>AUTOGERMANA, INC., SEIS Y ONCE CORPORATION, AXIS HOLDING LLC Y OTROS<br><br>**ÁNGEL D. GUERRERO ORTIZ, MILAGROS MENA GARCÍA, AMBOS POR SI Y EN REPRESENTACIÓN DE LA COMUNIDAD LEGAL GUERRERO-MENA, EN CONJUNTO CON SEIS Y ONCE CORP.**<br><br>PETICIONARIOS | KLCE202401084 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2021CV01731<br><br>Sobre: Sentencia Declaratoria, Acción Derivativa, Violación Deberes Fiduciarios, Incumplimiento de Contrato, Dolo, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

## I.

El 7 de octubre de 2024, el señor Ángel D. Guerrero Ortiz (señor Guerrero Ortiz), Milagros Mena García, ambos por sí y en representación de la comunidad legal Guerrero-Mena, en conjunto con Seis y Once Corp. (SOC) (en conjunto, peticionarios) presentaron una *Petición de Certiorari* en la que solicitaron que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 28 de agosto de 2024, notificada y archivada digitalmente en autos al día siguiente.[2] Mediante el dictamen, el TPI rechazó una solicitud de los

---

[1] Véase Orden Administrativa OATA 2024-054.
[2] Apéndice de la *Petición de Certiorari*, págs. 523-528.

peticionarios para que fuera referida a arbitraje una controversia surgida en el litigio de una reclamación promovida en su contra por el señor Eduardo J. Pellerano Nadal (señor Pellerano Nadal o recurrido).

El 9 de octubre de 2024, emitimos una *Resolución* en la que le concedimos al recurrido un término de diez (10) días para exponer su posición sobre los méritos del recurso.

El 17 de octubre de 2024, el señor Pellerano Nadal radicó una *Moción de prórroga* en la que solicitó una extensión del término concedido para expresarse sobre el recurso.

El 18 de octubre de 2024, emitimos una *Resolución* en la que le concedimos al recurrido un término final hasta el 31 de octubre de 2024 para exponer su posición sobre la *Petición de Certiorari*.

El 31 de octubre de 2024, el señor Pellerano Nadal presentó una *Oposición a petición de certiorari* en la que solicitó que deneguemos la expedición del auto de *Certiorari* solicitado.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos atinentes a la atención de la *Petición de Certiorari* de epígrafe.

**II.**

El caso de marras tuvo su génesis el 18 de marzo de 2021 con la presentación de una *Demanda* por parte del señor Pellerano Nadal en contra de los peticionarios y otras cinco corporaciones.[3] En la reclamación se alegó, entre otros asuntos que hemos actualizado para una mejor disposición de este recurso, lo siguiente:

> (1) El señor Pellerano Nadal es el fundador de la compañía Autogermana, Inc. (Autogermana).
>
> (2) En septiembre de 2008, Autogermana y SOC firmaron un *Services Agreement*, en virtud del cual la segunda compañía le ofrecería servicios a la primera, a través del señor Guerrero Ortiz.[4]

---

[3] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Apéndice de la *Petición de Certiorari*, págs. 83-91.

(3) En noviembre de 2008, el señor Pellerano Nadal decidió incluir al señor Ángel D. Guerrero Ortiz como socio minoritario con tal de incentivar mayor capital. Para ello, otorgaron tres contratos: (1) un *Subscription Agreement*;[5] (2) un *Autogermana, Inc. Stockholder's Agreement (Stockholder's Agreement)*;[6] y (3) un Acuerdo de Enmienda[7].

En el *Subscription Agreement*, Autogermana vendió 2,669 acciones comunes a favor de SOC, otorgándole 26.69% de las 10,000 acciones de la empresa. El acuerdo no contenía una cláusula de arbitraje.

En el *Stockholder's Agreement*, se reconoció que los únicos accionistas de Autogermana eran el señor Pellerano Nadal y SOC con 73.31% (7,331 acciones) y 26.69% (2,661 acciones) del total de acciones comunes, respectivamente. Como parte del acuerdo se pactó la siguiente cláusula de arbitraje:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, which cannot be resolved by negotiation, shall be settled by binding arbitration in San Juan, Puerto Rico, in accordance with the rules and procedures of the American Arbitration Association (ABA) [sic] or any successor organization thereof."

Además, acordaron que: SOC no estaría bajo el control de otra persona que no fuera el señor Guerrero Ortiz; si el señor Guerrero Ortiz dejaba de ser el operador de Autogermana, el señor Pellerano Ortiz compraría todas las acciones de SOC; y los accionistas o Autogermana tendrían derecho a adquirir cualquier transferencia de acciones a cualquier otra persona, entre otras disposiciones.

En el Acuerdo de Enmienda, pactaron que, a partir del 2011, Autogermana o el señor Pellerano Nadal tendrían la opción de comprar la totalidad de las acciones pertenecientes a SOC, entre otras cosas.

(4) El señor Guerrero Ortiz se convirtió en el accionista mayoritario de Autogermana en una alegada venta privada de acciones. Por ello, el señor Pellerano Nadal terminó con 49.84% y el señor Guerrero Ortiz con 50.16% de las acciones comunes de Autogermana.

(5) Mediante dos resoluciones redactadas por el señor Guerrero Ortiz, este indicó que por voto mayoritario de la Junta de Directores y ser el único miembro alegado de la misma deseaba remover al señor Pellerano Nadal como presidente.

(6) El señor Guerrero asumió la presidencia de Autogermana.

(7) La remoción del señor Pellerano Nadal como Presidente de la Junta de Directores de Autogermana fue en contra de un acuerdo de accionistas firmado por el señor Guerrero.

---

[5] Íd., págs. 111-152.
[6] Íd., págs. 92-110.
[7] Íd., págs. 153-154.

(8) En la demanda, Pellerano Nadal incluyó a seis entidades corporativas incluyendo a Onceiseis, Inc. y Autogermana.

Desde ese entonces, las partes han librado un extenso litigio, evidenciado por las más de 500 entradas en el expediente digital del caso en el SUMAC, además de varias comparecencias ante este foro. Muchos de esos incidentes procesales no son pertinentes a la controversia del presente recurso, excepto en lo subsiguiente.

El 25 de octubre de 2022, el señor Pellerano Nadal presentó una *Segunda Demanda Enmendada Jurada* en la que expandió considerablemente sus alegaciones luego de concluido el descubrimiento de prueba.[8] En lo pertinente, alegó que, por un error contable, la porción de acciones adjudicada a cada parte en el *Subscription Agreement* eran inexactas y, por ello, debía interpretarse que el señor Pellerano Nadal permanecía como el accionista mayoritario de Autogermana. En específico, adujo que, en aquel entonces, al señor Pellerano Nadal se le debió adjudicar 73.92% de las acciones comunes y a SOC, 26.08%.

Luego de un azaroso trámite procesal, el 21 de junio de 2024, los peticionarios presentaron una *Moción in limine para que se excluya testimonio pericial de la parte demandante o en la alternativa compeler el arbitraje* en la que solicitaron al TPI que eliminara un informe pericial propuesto por el señor Pellerano Nadal para demostrar la alegación de este de que la cantidad de acciones comunes vendidas a SOC era errónea.[9] En la alternativa, se solicitó que se emitiera una orden para compeler al recurrido a someter dicha controversia al arbitraje, en virtud del *Stockholder's Agreement*.

El 30 de julio de 2024, el señor Pellerano Nadal radicó una *Oposición a moción in limine* en la que solicitó que se declarara No

---

[8] Íd., págs. 1-82.
[9] Íd., págs. 356-378.

Ha Lugar la solicitud de exclusión de la prueba pericial promovida por los peticionarios.[10] Según argumentó, dicha prueba debía ser admitida por ser material y pertinente a las alegaciones de la *Segunda Demanda Enmendada.* Asimismo, planteó que la controversia respecto al alegado error de cálculo en la proporción de propiedad de las acciones no debía ser referido al arbitraje porque el contrato pertinente, el *Subscription Agreement*, no contenía una cláusula de arbitraje.

El 28 de agosto de 2024, el TPI emitió, notificó y archivó digitalmente en autos la *Resolución* recurrida en la que declaró No Ha Lugar la solicitud de los peticionarios para excluir el informe pericial propuesto por el recurrido y referir al arbitraje la controversia sobre los porcientos que cada parte alega tener de las acciones de la corporación Autogermana.[11] El foro primario fundamentó su determinación en que: (1) el informe pericial anunciado giraba en torno a asuntos controvertidos y pertinentes; (2) el *Subscription Agreement* suscrito por las partes no contenía una cláusula que obligara el arbitraje sobre la controversia en la compra, porciento de acciones e identidad del accionista mayoritario; (3) el *Stockholder's Agreement* no era el contrato que regía la controversia, toda vez que sus términos envolvían asuntos distintos de la transacción; (4) el caso se encuentra en una etapa adelantada; y (5) las partes habían litigado el caso por cuatro años, beneficiándose de un descubrimiento de prueba robusto, sin levantar el arbitraje como alegación afirmativa.

En desacuerdo, el 7 de octubre de 2024, los peticionarios presentaron la *Petición de Certiorari* de epígrafe y le imputaron al foro primario la comisión del siguiente error:

> EL TPI INCURRIÓ EN ERROR MANIFIESTO DE DERECHO
> AL DENEGAR LA MOCIÓN PARA COMPELER EL ARBITRAJE

---

[10] Íd., págs. 510-520.
[11] Íd., págs. 523-528.

Y NO REFERIR LA CONTROVERSIA RECIENTEMENTE SURGIDA AL MÉTODO ALTERNO DE RESOLUCIÓN DE DISPUTAS SEGÚN LO SELECCIONARON LAS PARTES, EN CLARA VIOLACIÓN A LA POLÍTICA PÚBLICA QUE RIGE EN PUERTO RICO A FAVOR DEL ARBITRAJE.

La posición de estos es que el *Stockholder's Agreement* sobreseyó el *Subscription Agreement* y, por eso, la cláusula de arbitraje contenida en él obliga a que las partes sometan a ese método la controversia sobre el porciento de acciones comunes de Autogermana correspondiente a cada una.

El 31 de octubre de 2024, el señor Pellerano Nadal radicó una *Oposición a petición de certiorari* en la que argumentó que el TPI no cometió el error señalado por los peticionarios y, por ello, solicitó que deneguemos la expedición del auto de *Certiorari* solicitado. Es su contención que el contrato que gobernaría la controversia sobre un posible error contable en el porciento de acciones adjudicadas a las partes es el *Subscription Agreement,* el cual no contiene una cláusula de arbitraje. Por ello, arguye que no existe obligación contractual de someter el asunto a dicho procedimiento alterno de resolución de conflicto.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1,[12] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[13]

---

[12] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

[13] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

**B.**

En Puerto Rico, existe una fuerte política pública a favor del arbitraje como método de resolución de conflictos. *Quiñones v. Asociación,* 161 DPR 668, 673 (2004). Así, nuestro ordenamiento jurídico permite que las partes en un contrato se obliguen a llevar ante un árbitro las posibles controversias futuras que surjan del contrato. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 32 (2010). Por ello, es insoslayable el carácter contractual inherente de la figura del arbitraje y, por tanto, se puede exigir únicamente cuando se ha pactado y conste por escrito. Íd.

Lógicamente, el trabajo de discernir si existe un pacto para someter una controversia al arbitraje es de los tribunales. Íd., pág. 36. A esos efectos, la fuerte política pública a favor del arbitraje exige que toda duda que exista sobre si procede o no debe resolverse a favor de éste. Íd. Una vez acordado el arbitraje, los tribunales carecen de discreción sobre su eficacia y tienen que dar cumplimiento a lo acordado. Íd. No obstante, no es posible obligar a una parte a someter una disputa al arbitraje si esa parte no lo ha pactado. Íd.

**IV.**

En el recurso de epígrafe, los peticionarios impugnan una determinación del TPI en la que se rechazó su solicitud para someter al arbitraje una controversia sobre los porcientos de participación

---

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

de cada parte en Autogermana. Para el foro primario, el *Subscription Agreement* era el contrato que regía la compra y el porciento de acciones de cada parte y no contenía una cláusula que requiriera arbitrar una controversia sobre estos asuntos.

En contrario, los peticionarios sostienen que el *Stockholder's Agreement* sustituyó el *Subscription* Agreement, contiene una cláusula que obliga a las partes a arbitrar y, por ello, deben acudir al arbitraje para descifrar los porcientos de participación de cada una.

Por su parte, el señor Pellerano Nadal reitera que no existe obligación contractual que requiera someter el asunto al arbitraje porque el contrato mediante el que se adquirieron las acciones no contiene disposición alguna a esos efectos.

Tras un análisis objetivo, sereno y cuidadoso del voluminoso expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que corresponde abstenernos de ejercer nuestra función revisora y rechazar intervenir con la determinación del TPI. Un examen sosegado del expediente del caso y de la determinación recurrida, no arroja error alguno que amerite nuestra intervención. Por el contrario, la determinación recurrida fue esencialmente correcta al rechazar someter al arbitraje la controversia sobre las porciones de participación del señor Pellerano Nadal y SOC en Autogermana. El foro primario cumplió con la normativa vigente, aplicable a las cláusulas de arbitraje, toda vez que basó su determinación en el texto claro de los acuerdos suscritos por las partes. El arbitraje únicamente puede exigirse cuando se ha pactado y no procede compeler a una parte a que someta una disputa al arbitraje cuando no lo ha acordado. ***VDE Corporation v. F & R Contractors,*** supra.

**V.**

Por los fundamentos anteriormente pormenorizados, se *deniega* la expedición del auto de *Certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones